S. R. CLOWNEY *vs.* JAMES CATHCART AND OTHERS.

Under a decree of the Court of Equity land of an intestate was sold by the Commissioner, and purchased by A, one of the administrators of the estate, B being the other. A gave his bond, with B at d C as sureties, and a mortgage of the land, to secure the payment of the purchase money. Under an order of the Court the Commissioner assigned the bond and mortgage to the administrators, to be applied by them in a due course of administration, and A, who was the acting administrator, assigned them to a creditor of the intestate, in satisfaction of his claim on the estate. A afterwards mortgaged the land to D, and, under a decree to foreclose this last mentioned mortgage, B became the purchaser of the land: *Held* that the assignment of the bond and mortgage did not extinguish them by mere operation of law; that they were valid securities in the hands of the creditor to whom they had been assigned by A, and that the mortgage could be enforced for his benefit as against B.

Where securities for the payment of a debt are assigned to the debtor in a different right from that of his obligati n to pay, they are not thereby extinguished by mere operation of law. Some act expressive of an intention to treat them as extinguished, and in its nature equivalent to payment, must be done, or they will remain valid and subsisting securities for the benefit of those m whose right they were assigned.

BEFORE BOOZER, J., AT FAIRFIELD, JULY TERM, 1869.

This was a bill to foreclose a mortgage of a tract of land.

The land had been a portion of the real estate of Robert Cathcart, deceased. By a bill filed in the Court of Equity for Fairfield District, wherein James Cathcart and Richard Cathcart, the administrators of the estate of Robert Cathcart, deceased, were complainants, and the heirs and creditors of the deceased were defendants, a sale of all the real property of deceased was prayed; and the same having been ordered to be sold by a decretal order made in the cause in July, 1849, James Cathcart became the purchaser of the tract of land in question; and to secure the payment of the purchase money thereof, he gave his bond to James B. McCants, then Commissioner in Equity for Fairfield District, with Richard Cathcart and Daniel Nelson as sureties thereto, and a mortgage of the premises. This is the mortgage now sought to be foreclosed.

By order made in the same cause by Chancellor Dargan, of date 12th July, A. D. 1850, the Commissioner in Equity was directed, after making certain payments in said order specified, to pay over to the administrators of Robert Cathcart, the funds remaining in his hands, "upon their giving bond with a penalty of double the amount so paid over to them, with sufficient sureties thereto, to be approved by the Commissioner, conditioned for the faithful disbursement of said funds so paid over in due course of administra-

tion." Under this order the bond and mortgage in question were transferred by William R. Robertson, the successor of James B. McCants in the office of Commissioner in Equity, to the administrators.

After the said assets had been paid over to the administrators as aforesaid, James Cathcart, who was the acting administrator, and the obligor and mortgagor, assigned the bond and mortgage, in satisfaction of a claim which they held against the estate of Robert Cathcart, deceased, (the one in question in this cause), to Robinson and Caldwell. The assignment of the mortgage had only one subscribing witness. These assignments bear date the 8th day of July, A. D. 1852, the assignor styling himself administrator.

Subsequently, on the 12th day of July, A. D. 1852, a return was made before the Commissioner in Equity last aforesaid, which, although appearing from its heading to have been the return of the administrators of Robert Cathcart, was, in fact, made by James Cathcart alone, who was the acting administrator. In this return James Cathcart charged himself, as administrator, with the amount of said bond, both principal and interest, ($2,356,) as received by him in full on 29th June, 1852, and credited himself with payment to Robinson & Caldwell, of their bond and interest in full, ($14,718).

Subsequently, James Cathcart mortgaged the same tract of land to the Exchange Bank. Proceedings were afterwards instituted to foreclose the last mentioned mortgage, and at a sale of the land, under an order made by the Court of Equity in said proceedings, it was purchased by Richard Cathcart, at a price which would have been a full and fair consideration had the land been unencumbered. This land is now in the possession of Richard Cathcart, who holds the title of John H. Pearson, Commissioner in Equity for Richland District.

The proceedings in this case were to foreclose the prior mortgage given by James Cathcart to the Commissioner in Equity. The bill was filed by Samuel B. Clowney, Clerk of the Court, as successor in office of James B. McCants, late Commissioner in Equity for Fairfield District, against James Cathcart, Richard Cathcart, and Daniel Nelson, in the Court of Common Pleas for Fairfield County, alleging the existence of the mortgage and bond, and that the bond was unsatisfied, and praying a foreclosure and sale of the land. The bill was ordered *pro confesso* against the defendants, James Cathcart and Daniel Nelson. The defendant, Richard Cathcart, filed his answer

thereto, alleging, by way of defense, that by the transfer of the bond
to the administrators by the Commissioner in Equity, under the de-
cretal order hereinbefore referred to, the bond became, in law, paid,
the encumbrance of the mortgage removed from said land, and
James Cathcart chargeable, in his capacity as administrator, with the
amount due on the bond; also that Samuel B. Clowney has no
interest in the bond as the successor of the said Commissioner, and
he sets up and opposes the title to him of the Court of Equity in
the proceedings by the Exchange Bank.

On hearing the pleadings, evidence and arguments of counsel,
His Honor Judge Boozer decreed the sum of three thousand two
hundred and seven dollars and eighty-four cents against the defend-
ants, and ordered the land to be sold for a foreclosure.

His opinion is as follows:

BOOZER, J. The bond and mortgage described in the bill, in
this case, was given to the Commissioner in Equity for Fairfield
District in 1849. The first installment, when it fell due, was paid
to him. It is not denied that the second and last installment re-
main unpaid.

In obedience to an order made in a suit instituted in the Court
of Equity, at Fairfield Court House, by James Cathcart and Rich-
ard Cathcart, administrators of Robert Cathcart, deceased, vs. the
heirs-at-law and creditors of the estate of their intestate, about the
year 1850, this bond and mortgage, together with others held by
the Commissioner, were paid over or transferred to said adminis-
trators, to be by them applied in due course of administration.

Two of the obligors are administrators of Robert Cathcart, and
one of them, James Cathcart, is the mortgagor; and it is contended
by Richard Cathcart, now in possession of the mortgaged premises,
that this transfer, by order of Court, operates a payment or satisfac-
tion of the bond and mortgage.

In order to determine this question, the Court must look to the
order directing the transfer and the intention of the Court in mak-
ing said order. It is clear it was not intended to operate as a satis-
faction. The obligees were acting in a fiduciary capacity. They
were required by the order to employ the funds in due course of
administration. What was that? First, to satisfy debts established
against the estate of their intestate; and then, if anything re-
mained, to distribute it.

In carrying out the order and intention of the Court, this bond
and mortgage were transferred by the mortgagors to a creditor of

the intestate who had established his claim before the Commissioner. The creditor received it as money, and has since received various small payments on it by one of the administrators, the principal obligor.

The transfer to an administrator could not operate as a satisfaction. Even the appointment of a debtor as administrator of a creditor does not amount to payment. Suppose the administrator to be a mortgagor, does his appointment satisfy the mortgage? All the authorities point to a contrary conclusion.

But it is insisted that the Commissioner has no status in this Court, because, by operation of Chancellor Dargan's order, he no longer has any right to control the bond and mortgage. It may be answered that he never had any personal interest. He was a mere custodian—an instrument which the Court might control at all times to subserve the purpose of justice and equity. He transferred (turned over) the bond and mortgage to the administrators, who transferred them to a creditor, who holds them unsatisfied. Will it be denied that the Court may direct the Commissioner to allow his name to be used to collect the debt? Nay; it would require it of him, as is often done.

It is not necessary to decide the point whether the creditor might not in his own name maintain this suit. Perhaps he might be regarded in this Court as a sort of equitable assignee; but he unquestionably had the right to use the name of the officer of the Court to enable him to recover his demand. Even a full written assignment, duly attested, from the obligee and mortgagee, would not deprive him of the right to maintain his suit in the name of the latter. This position is undeniable. That course has been pursued here, and the Court is of the opinion that the complainant can sustain his suit.

It is insisted that the defendant, Richard Cathcart, has a high equity; that he purchased at a sale ordered by the Court to foreclose a junior mortgage, and paid a full price. That, itself, does not create an equity, unless he was "an innocent purchaser without notice." But here he had express notice. There is no doubt about it. He is a party to the bond, the payment of which is secured by the mortgage. He knew of the execution of the mortgage, and that it was unsatisfied. As one of the administrators, he was bound to know what disposition had been made of it. He knew that it was held by a creditor, and was unpaid. How, then, does his equity arise? He may have paid a full price at the Commis-

sioner's sale. That cannot change the nature of his case. It was a public, a judicial sale.

There is nothing in the ground taken, that the Commissioner was bound to take notice of all proceedings in this Court. In order to bind him, or any other one, he must be made a party to the proceedings. In the proceedings of the Exchange Bank against James Cathcart, under which Richard Cathcart purchased, neither the Commissioner nor any creditor of Robert Cathcart was made a party. Therefore, according to all the authorities, they are not precluded by the decree in that case—that is, their lien is not destroyed or affected by that decree. The whole question might have been adjudicated in that case, and it is to be regretted that it was not done; yet the creditor holding the bond and mortgage in this case cannot be affected by that omission.

It is the judgment of the Court that the complainant is entitled to the relief he asks, and the necessary orders have been accordingly made.

The defendant, Richard Cathcart, appealed, and now moved this Court to modify the decree, and the order based thereon, by reversing the same so far as they decree an amount as owing by Richard Cathcart, and direct a sale of the land for a foreclosure, upon the following grounds:

1. Because by the transfer of the bond and mortgage (upon which suit is brought) by the Commissioner in Equity, in compliance with the terms of the decree of Chancellor Dargan, of date 12th July, 1850, to the obligor and mortgagor, James Cathcart, the bond secured by the mortgage became, in law, paid, and James Cathcart chargeable, in his capacity as administrator, with so much money (to wit, the principal and interest due on the bond,) received as assets of the estate of his intestate, to be by him administered.

2. Because thereupon the appellant, Richard Cathcart, became released from all liability as surety, and the land from the encumbrance of the mortgage.

3. Because James Cathcart did, in fact, charge himself, in his returns as administrator, with the receipt of the amount due on said bond, which operated in law as a payment by him.

4. Because the transfer by James Cathcart as administrator to Robinson and Caldwell of the bond and mortgage, after its transfer to him by the Commissioner, was inoperative to bind the appellant as surety, or continue the encumbrance on the land.

5. Because the assignment of the bond by James Cathcart could

not amount to a renewal of the bond so as to continue appellant's (Richard Cathcart's) liability as surety; nor could the assignment of the mortgage amount to the renewal of that, the said assignment having only one subscribing witness.

6. Because the order of Chancellor Dargan gave the administrators no authority to make transfer of bonds upon which they were *obligors.*

7. Because the order of Chancellor Dargan, as between the Commissioner in Equity, and his successors in office, and the administrators, forever barred, after the transfer of the bonds, any action by the Commissioner and his successors in office against the administrators upon said bonds.

8. Because the appellant, as purchaser of the land at the sale made by the Court of Equity, is entitled to all the equities of the Exchange Bank; and if the bank is charged with notice of the prior mortgage, that knowledge must be coupled with notice of the return of James Cathcart, as administrator, wherein he charges himself with the full amount of the principal and interest due on the bond secured by the prior mortgage.

9. Because the appellant is entitled to have the benefit of the technicalities of the law, inasmuch as he stands upon a high equitable position, to wit: He bought the land at a sale made by the authority of the Court, in pursuance of proceedings to which Robinson & Caldwell ought to have been (if they were not) parties, provided they had any rights recognizable in a Court; and after consultation with legal gentlemen, his long aforetime adviser never intimating to him any defect in the title, he gave a price for the land to the full extent of its value, if unencumbered; showing thereby that he was induced to believe that it was unencumbered.

10. Because the real plaintiffs in the cause, Messrs. Caldwell & Robinson, are not entitled to anything at the hands of the Court besides their mere technical rights, inasmuch as they suffered the sale before referred to to take place, without warning the public that they claimed to have an encumbrance upon the land; and their silence at said sale shows that they looked merely and solely to James Cathcart's equitable or constructive guarantee as assignor of the bond, as security for their debt.

*Rion,* for appellant.

*Robertson, McCants & Douglass,* contra.

May 31, 1871. The opinion of the Court was delivered by

WILLARD, A. J. James and Richd. Cathcart, the administrators of Robert Cathcart, deceased, filed a bill and obtained a decree for the sale of the real estate of their intestate. The real estate was sold under this decree, and James Cathcart, one of the administrators, became a purchaser of a tract of land, giving his bond, with Richard Cathcart and Daniel Nelson as sureties, and a mortgage upon the land purchased. This bond and mortgage was taken by the Commissioner in Equity, and held by him until transferred by him to James Cathcart, under an order made by Chancellor Dargan. This order, after directing the Commissioner to apply the funds in hand, appertaining to the estate of Robt. Cathcart, to the payment of certain specified debts, directed the balance to be paid to the administrators of Robert Cathcart, "upon their giving bond, with a penalty of double the amount so paid over to them, with sufficient sureties thereto, to be approved by the Commissioner, conditioned for the faithful disbursement of said funds in due course of administration."

The transfer was made by delivery of the bond and mortgage to the administrators, without the execution of any formal assignment.

On the 8th of July, 1852, James Cathcart, the acting administrator, assigned this bond and mortgage to Robinson and Caldwell, in satisfaction of a demand held by them against the estate of his intestate. Subsequently, James Cathcart mortgaged the same land to the Exchange Bank. Upon a foreclosure of the last mentioned mortgage, Richard Cathcart became the purchaser.

The bill, in this case, was filed in the name of the Clerk of the Court of Common Pleas, as the successor of the Commissioner in Equity, but for the benefit of Robinson and Caldwell, who are the equitable, if not the legal, assignees of the bond and mortgage, assuming such instruments to be legally valid. The principal question in the case depends upon the fact that, after the bond and mortgage passed into the hands of James Cathcart, as administrator, he transferred them to a creditor of his intestate.

The questions are, were the bond and mortgage valid securities in the hands of the obligor holding them as administrator? And had he authority to transfer them as assets of the intestate estate in satisfaction of the debts of that estate. Taking the view most favorable for the appellant, namely, that under the terms of the order, and the transfer of the securities thereunder, he became the owner of the

26A

bond and mortgage, still the bond and mortgage were not extinguished in the hands of the administrator by the mere act and operation of law. The rules of extinguishment and merger are inapplicable, because the possession of the securities, and the obligation to pay, were in different rights, though vested in the same person. Creditors and distributees had the right to treat the bond and mortgage as paid from the maturity of the debt, but no rule of law or principle of equity compels them to do so unless they deem it for their interest.— *Griffin* vs. *Bonham*, 9 Rich. Eq., 77.

If they chose, they could waive this equitable remedy, and, in a proper case, pursue the bond and mortgage as available assets in the hands of the administrator.— *Kennedy* vs. *Ewriger*, 18 Pick., 232. The administrator had authority to transfer these assets in discharge of the debts of the estate, and the circumstance that they were his own bond and mortgage makes no difference in this respect.— *Ipsich Man. Co.* vs. *Story*, 5 Met., 310.

Had the administrator done any act expressive of an intention to treat the securities as extinguished, and, in its nature, equivalent to payment, the debt would have become extinguished, and the mortgage discharged. In *Ipsich Man. Co.* vs. *Story*, accounting before the Probate Court, for the amount of the debt as so much cash in hand, when followed by a decree of distribution, and satisfaction of such decree, was held to be equivalent to actual payment. In that case the security would be destroyed.

It is contended by the appellant that the entries in the administrator's account of a credit, under date of June 29th, to the estate, of the amount of the bond, with interest computed to July 1, 1852, evidences such an act and intent on the part of the administrator as amounts to payment in fact. But it appears by the decree that this return was filed subsequently to the transfer of the bond and mortgage, to-wit, on the 12th of July, 1852, and the entries must be referred to the latter date. Regarding the act of the administrator in this light, it is a conclusive objection to its validity that it took place subsequent to the transfer of the bond. But these entries do not sustain the construction sought to be put upon them. Under date of July 1st, 1852, the time up to which interest was credited on the amount of the bonds, the estate is debited with an amount paid to Robinson & Caldwell, including the amount of the bond. It is, therefore, evident that the entry in question, including the credit under date of June 29, and the debit of July 1st, was intended to express the transaction which was complete by the transfer of the

bond and mortgage into the hands of the administrator, and the subsequent transfer of the same by him to Robinson & Caldwell. It is evident, therefore, that the administrator did no act equivalent to the payment of the bond and mortgage, and that they are valid in the hands of Robinson & Caldwell. The appellant has cited the language used in *Griffin* vs. *Bonham*, 9 Rich. Eq., 77, as sustaining the proposition that the transfer of the bond to the administrator worked an extinguishment of the debt and securities, without regard to the act or intent of the administrator. The question in *Griffin* vs. *Bonham* was one of commissions on a debt due from the executor to the testator's estate, as between the administrator of a deceased executor and the surviving executor. The Court had evidently in mind the ordinary case of a debtor becoming the executor of his creditor when all parties in interest are disposed to treat the debt as an asset realized. Had the question been presented to the Court whether it should be in the power of the executor to compel the creditors and distributees to take the personal security, and that of his official bondsmen, in lieu of a well secured mortgage, there is no reason to believe, from anything contained in that case, that the Court would have assented to so unreasonable and inequitable a demand.

Reference has also been made to the very general expression used in *Schnell* vs. *Schroeder*, Bail. Eq., 334, to the effect "that the authorities concur that a debt due by an administrator to his intestate estate is assets in his hands." This expression is unquestionably correct in the sense in which it is employed, namely, that the creditors and distributees may charge such debt as a cash asset. But to say that a mortgage made by a person subsequently becoming the administrator of the mortgagee is *ipso facto* destroyed thereby, ceasing to be an available asset of the intestate estate, is a very different proposition from that quoted from *Schnell* vs. *Schroeder*.

The foregoing disposes of all the objections made to the decree by the grounds of appeal except one. It is contended that the authority of the administrator to dispose of the bond and mortgage is affected by the terms of Ch. Dargan's order. The order in question simply placed the securities in the hands of the administrators, under special securities, in order that they might employ them in the course of administration. It did not affect the powers of the administrators as to such assets, either by way of enlarging or restricting them.

The appeal must be dismissed and the decree affirmed.

*Moses*, C. J., and *Wright*, A. J., concurred.